IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:  Case No. **07-04259-lmj7**

**Mark A. Rold,**
**Becky E. Rold,**

      Debtors

**MEMORANDUM OF DECISION**
(date entered on docket: October 15, 2010)

The United States Trustee for Region 12 ("U.S. Trustee") filed a motion to dismiss this Chapter 7 case pursuant to 11 U.S.C. section 707(b)(1). That section permits a court to dismiss a Chapter 7 case brought by an individual debtor with primarily consumer debts if the court finds that allowing the case to proceed as a liquidation case would be an abuse of the provisions governing Chapter 7. Relying on subparagraph (A) of section 707(b)(2), the U.S. Trustee contends a presumption of abuse arises because Debtor Mark A. Rold ("Debtor") and Joint Debtor Becky E. Rold ("Joint Debtor" or "Spouse") (collectively, "Debtors") do not pass the statutory means-test. Debtors do not dispute that the presumption arises but, relying on subparagraph (B) of section 707(b)(2), they contend that repayment of four nondischargeable student loans that Joint Debtor obtained for two of their sons amounts to special circumstances that rebut the presumption. Having reviewed the record, having considered the arguments of the parties, and having studied the applicable statutory provisions, the Court concludes that clause (i) of section 707(b)(2)(B) does not encompass any payments for nonpriority unsecured debts and therefore enters its decision in favor of the U.S. Trustee.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1134 and the standing order of reference entered by the United States District Court for the Southern District of Iowa.  This is a core matter under 28 U.S.C. section 157(b)(2)(A) and (O).

## APPLICABLE STATUTORY PROVISIONS

11 U.S.C. section 707(b)(1) provides in relevant part that:

> After notice and a hearing, the court, . . . on a motion by the United States trustee, . . . , may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).

11 U.S.C. section 707(b)(2)(A), the "means-test" calculation, provides that:

> (i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income **reduced by the amounts determined under clauses (ii), (iii), and (iv)**, and multiplied by 60 is not less than the lesser of-
> 
> > (I) 25 percent of the debtor's *nonpriority unsecured claims* in the case, or $6,575, whichever is greater; or
> > (II) $10,950.
> 
> (ii)(I) The debtor's **monthly expenses shall be** the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.  **Such expenses shall include** reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor.  **Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.**  In addition, the debtor's **monthly expenses shall include** the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law.  The expenses included in the debtor's monthly expenses described in the preceding

sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's **monthly expenses may also include** an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

    (II) In addition, the debtor's **monthly expenses may include**, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

    (III) In addition, for a debtor eligible for chapter 13, the debtor's **monthly expenses may include** the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

    (IV) In addition, the debtor's **monthly expenses may include** the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

    (V) In addition, the debtor's **monthly expenses may include** an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's **average monthly payments on account of secured debts shall be calculated as** the sum of—

    (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

    (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

    (iv) the debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority;

> divided by 60.
> (iv) The debtor's **expenses for payment of all priority claims** (including priority child support and alimony claims) **shall be calculated as** the total amount of debts entitled to priority, divided by 60.

11 U.S.C. § 707(b)(2)(A) (emphasis added).

11 U.S.C. section 707(b)(2)(B), the "special circumstances" rebuttal, provides that:

> (i) In any proceeding brought under this subsection, **the presumption of abuse may only be rebutted by demonstrating special circumstances**, such as a serious medical condition or a call or order to active duty in the Armed Forces, **to the extent such special circumstances that justify additional expenses** or adjustments of current monthly income **for which there is no reasonable alternative.**
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment to income and to provide—
>   (I) documentation for such expense or adjustment to income; and
>   (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.
> (iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of
>   (I) 25 percent of the debtor's *nonpriority unsecured claims*, or $6,575, whichever is greater; or
>   (II) $10,950.

11 U.S.C. § 707(b)(2)(B) (emphasis added).

## DISCUSSION

On their Official Form 22A (Chapter 7 Statement of Current Monthly Income and Means-Test Calculation) ("Form 22A"), Debtors reported they had $670.00 monthly disposable income as a result of subtracting $5,504.02 in all allowed deductions from their $6,174.02 current monthly income. When multiplied by 60, that monthly disposable income figure becomes $40,200.00—a figure that exceeds the means-test

benchmark of $10,950.00.[1]  Accordingly, under section 707(b)(2)(A), a granting of relief in this case is presumed to be an abuse of the provisions of Chapter 7.

In an attempt to rebut the presumption of abuse and to comply with the procedural requirements set forth in clauses (ii), (iii), and (iv) of section 707(b)(2)(B), Debtors attached a "Declaration of Debtors Regarding Special Circumstances Adjustments to Expenses" to their Form 23.  In that document, they swore under penalty of perjury that "[s]pouse is obligated on over $77,000 in non-dischargeable Parent Plus student loans.  The student loans are not eligible for consolidation or deferment.  The monthly payments on the student loans are $915.36."  Given their monthly disposable income under the means-test was $670.00, Debtors correctly concluded that they would not have any disposable income if they were permitted to increase their total deductions by $915.35.  The declaration disposes of the procedural requirement in clause (iv).

At the evidentiary hearing on this contested matter, Debtors offered and the Court admitted exhibits documenting Joint Debtor's liability and her current monthly obligations with respect to two loans for one son and two loans for another son.  The information contained in the exhibits was consistent with the representations Debtors made in their sworn declaration.  As required by clause (iii), Joint Debtor testified under oath as to the accuracy of the exhibits.  The exhibits dispose of the procedural requirement in subclause (I) of clause (ii).

---

[1] Due to the structure of 11 U.S.C. section 707(b)(2)(A)(i), a debtor's monthly disposable income "multiplied by 60" will always trigger the presumption of abuse if that multiplied figure is equal to or more than the amount set forth in subclause (II). It is not necessary to perform the calculation in subclause (I); however, to demonstrate this point, the Court observes that Debtors listed debts totaling $161,466.47 on Schedule F (Creditors Holding Unsecured Nonpriority Claims).  Twenty-five percent of that amount is $40,366.62.  Though that percentage amount controls subclause (I) because it is greater than $6,575.00, it is not outcome determinative because it is not less than the amount set forth in subclause (II).

As required by clause (iii), Joint Debtor also explained in detail Debtors' special circumstances that make the $915.36 increase in their total deductions necessary and reasonable and thereby disposed of the procedural requirement in subclause (II) of clause (ii).  With respect to the reason for her incurrence of the four student loan obligations, Joint Debtor reported the maximum amount of loan financing incurred by the sons was insufficient to cover all their undergraduate expenses.  On cross-examination, she acknowledged that it was her choice to incur these debts.  She also agreed that the cost of the sons' pursuit of college educations out-of-state was likely more expensive than it would have been had they gone to college in-state.

Then, with respect to her request to be allowed to make the $915.36 monthly payment in full and in an uninterrupted fashion over the next eight to ten years in order to avoid incurring additional interest on the loans, Joint Debtor testified that the sons were neither legally obligated to repay the loans nor financially able to do so. Specifically, one son was a graduate student, who used the $720.00 per month he earned from his university for basic living expenses, and the other son had temporary employment in Chicago but lacked sufficient income to pay for more than basic living expenses and his own student loan obligations.  Somewhat contrary to Debtors' declaration, Joint Debtor acknowledged on direct examination that she had obtained three loan consolidations in recent years and thought she could obtain another but was of the opinion there was no guaranty the interest rate would be better than the current variable rate on two of the loans.  Also somewhat contrary to Debtors' declaration, Joint Debtor reported the loans had been in forbearance for a short time at the outset of this case due to Debtor's three hospitalizations during the prior year for a knee replacement,

a herniated disk, and a blood clot.[2]  Joint Debtor concluded there was no imminent reason to pursue another forbearance, and Debtor testified he had no pending serious medical issues.

Between their declaration and their testimony, Debtors have satisfied the procedural requirements of clauses (ii), (iii), and (iv).  Nevertheless, clause (i) of section 707(b)(2)(B) requires a debtor to demonstrate special circumstances that justify "additional expenses" or "adjustments of current monthly income"[3] for which there is no reasonable alternative.  Noticeably clause (i) does not reference "payments for debts."[4] That Joint Debtor's student loan obligations are nondischargeable does not transform them from being debts into being expenses.

---

[2] Though Debtors were able to cover the cost of most of these medical expenses through their health savings account, they are still obligated to make payments of $425.00 per month.  On Form 22A, Debtors indicated that they had actual monthly expenses of $350.00 for medical care. However, even with the additional $75.00 deduction from $670.00 their monthly disposable income—either as part of the section 707(b)(2)(A) calculation or as an unarticulated section 707(b)(2)(B) special circumstances, Debtors' resulting $595.00 disposable income multiplied by 60 would exceed the $10,950.00 benchmark.

[3] This is not a case in which special circumstances have impacted Debtors' current monthly income that is defined by 11 U.S.C. section 101(10A) as:

> The term "current monthly income"—
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title  18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A).

[4] As a basic matter of statutory interpretation, a court must first look to "the language of the statute itself." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).  If the language of the statute's plain meaning is clear, then this plain meaning is conclusive, and a court "must enforce the statue according to its terms."  Id. (quotation omitted).

Enforcing the substantive provision of the special circumstances rebuttal according to its specific terms is consistent with the specific terms found in the means-test calculation.  That is, Congress carefully set out in clause (ii) of section 707(b)(2)(A) what expenses shall or may be included in allowed deductions and clearly indicated those expenses shall not include any payments for debts.  Then, in clauses (iii) and (iv) of that section, Congress addressed deductions for secured debts and all priority unsecured claims.  Noticeably there is no clause addressing deductions for any nonpriority unsecured debt.  Consistent with that omission, subclause (I) of section 707(b)(2)(A)(i) and subclause (I) of section 707(b)(2)(B)(iv) do not exclude any nonpriority unsecured claims from their calculations.

## CONCLUSION

WHEREFORE, the Court finds that Debtors have not rebutted the 11 U.S.C. section 707(b)(2)(A) presumption of abuse and, therefore, the U.S. Trustee's 11 U.S.C. section 707(b)(1) motion to dismiss must be granted.

A separate Order shall be entered accordingly.

/s/ Lee M. Jackwig
Lee M. Jackwig
U.S. Bankruptcy Judge

Parties receiving this Order from the Clerk of Court:
Electronic Filers in this Chapter Case